IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
QONTAE BOLTON, et al.,          }
                                }
     Plaintiffs,                }
                                }     CIVIL ACTION NO.
v.                              }     04-AR-3163-S
                                }
DURABLE MEDICAL EQUIPMENT       }
RENTAL & SALES, INC., et al.,   }
                                }
     Defendants.                }
```

**MEMORANDUM OPINION**

Before the court is defendants' motion pursuant to Rule 12(b)(6) to dismiss two of the plaintiffs' claims. Durable Media Equipment Rental & Sales, Inc. ("Durable"), and Pete Allen, III (collectively, "defendants"), have moved to dismiss the claims by plaintiffs', Qontae Bolton ("Bolton") and Iris Johnson (collectively, "plaintiffs"), of retaliation under 42 U.S.C. § 1981, found in Count I of the complaint, and the claim for interference with business relationships, found in Count III of the complaint. Defendants argue that both claims are due to be dismissed because they fail to state claims upon which relief can be granted.

**Interference with Business Relations**

To start with the easier question, this court finds that plaintiffs' claim for interference with a business relationship is a claim upon which relief could be granted. Plaintiffs allege that defendants gave false statements to prospective employers who

inquired into references about the plaintiffs. In this case, there was arguably a prospective business relation about which the plaintiffs can complain if interfered with. The cause of action for interference with business relations and the cause of action for interference with contract relations were merged, and that doctrine has been expanded in Alabama. *Harrell v. Reynolds Metal Co.*, 495 So.2d 1381, 1387 n.3 (Ala. 1986). The new cause of action applies to prospective or potential business relations. *Ex Parte Alabama Dept. of Transp.*, 764 So.2d 1263, 1270 (Ala. 2000) (adopting § 766 of the Restatement (Second) of Torts). Precisely, the Alabama Supreme Court held:

> Defining this cause of action to apply to a "business relation" as well as a "contractual relation" allows a plaintiff a remedy in the situation where a defendant has intentionally interfered with a prospective contract as well as when he has interfered with an existing contract.

*Id.* Clearly, there is a viable claim stated for interference with a prospective business relationship. Comment C to § 766 of the Restatement, adopted by the Alabama Supreme Court, specifically notes interference with a prospective employment relationship as a viable claim under the Restatement view. Restatement (Second) Of Torts § 766, cmt. C (1979). Alabama recognizes a cause of action for any plaintiff when he or she claims that a former employer intentionally interfered with prospective employment opportunities by giving false statement about the employee to the prospective employer. Defendants' other contentions and defenses are factual

questions which must be left to be sorted out either at the summary judgment stage or at trial.

## Post Contract Retaliation Under § 1981

The first question presented in defendants' motion to dismiss is whether or not plaintiffs' have stated a viable claim for retaliation under § 1981. Defendants contend that plaintiffs have not stated a claim upon which relief can be granted for two reasons: (1) they failed to state a retaliation claim under § 1981 in their complaint; and (2) at the time of any alleged retaliation, no contract existed between the plaintiffs and Bolton. Only defendant Bolton attempted to articulate such a retaliation claim in the complaint.

First, Bolton does include a claim for retaliation under § 1981 in Count I of the complaint. The plaintiffs' complaint reads as follows:

> Defendants further violated the rights of Bolton under § 1981, as amended, by making false and derogatory statements about her to Virginia College and prospective employers because she had opposed the discriminatory termination of her employment in the form of her attorney's letter to Allen.

¶ 29 of Plaintiffs' Complaint. Without explicitly using the word "retaliate," Bolton articulates a claim of "retaliation" if such a claim exists in the complaint, construed in plaintiff's favor under Rule 8 Fed. R. Civ. P.

The more interesting question is whether a claim for

retaliation can exist under § 1981 where the conduct complained of occurred only after the termination of the contract between the parties. Section 1981 prohibits racial discrimination in the making and enforcement of contracts. Since the 1991 amendments to § 1981, this includes not only the making and enforcement of contracts, but also the performance, modification, and termination of such contracts. 42 U.S.C. § 1981(b).

It is clear that a cause of action for retaliation exists in § 1981's prohibition of racial discrimination is embodied in the "to make and enforce contracts,... as is enjoyed by white citizens" language of § 1981. *See, e.g., Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1410 (11th Cir. 1998)(noting "claim under § 1981 may be based upon retaliatory action taken against an employee for the employee's lawful advocacy of the rights of racial minorities"). Where a plaintiff alleges race based discrimination and takes protected action based on that allegation of illegal race based discrimination and, as a proximate consequence, is mistreated or terminated, a cause of action for retaliation is available under § 1981. Defendants acknowledge that a claim for retaliation, generally, exists under § 1981, but argue that it does not extend beyond the end of the contractual relationship. There is no Eleventh Circuit law directly on this point.

Bolton articulates two separate theories upon which she believes her claim can be based. First, Bolton believes that she

4

can claim retaliation in light of the original contractual relationship even if that contract was terminated when alleged retaliation occurred. This the post-termination theory of protection. Second, Bolton contends that even if she cannot base her claim on her original contract with Durable, her claim is rightfully based on Durable's interference with her attempt to form a new contract with a prospective employer. This the pre-formation theory of protection.

Bolton lays out a broad conception of the protections afforded by § 1981 in her conception of the post-termination theory. Bolton makes a three pronged argument that conduct after the termination of the contract is outside the purview of the protection of the original contract afforded by § 1981, as amended . First, Bolton argues that Eleventh Circuit precedent actually supports such a protection. Bolton notes a pre-*Patterson* case which, she says, stands for the something like the proposition he hopes the court to adopt today. In *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir. 1990), the court found that the retaliation claim was barred because *Patterson* narrowed the scope of a § 1981 to include only the formation of an employment contract.[1] The plaintiff in

---

[1]The critical issue is not the effect of *Patterson* upon the precedent, but rather whether or not the right to a reference is somehow part of a contract. Clearly, *Patterson* is no longer good law in light of the amendments to § 1981. Thus, debating whether or not something would have come out differently with or without *Patterson* is a little beside the point. The question should be posed in terms of whether or not a reference is a right created by this employment contract which could be "enforced" even after the contract itself was terminated. The answer is almost certainly that it is not

*Sherman* claimed his employer retaliated against him after he filed an EEOC complaint, alleging he was wrongfully terminated, by encouraging the plaintiff's subsequent employer terminate him. The Eleventh Circuit specifically noted:

> Sherman alleges that Burke retaliated against him for filing an EEOC complaint. Sherman's EEOC complaint, however, **did not relate to any right created by his employment contract** with Burke. Thus, in accordance with the Supreme Court's mandate in *Patterson*, we hold that Sherman has no cause of action under section 1981.

*Id.* at 1535 (emphasis added). Bolton, therefore, argues that because *Patterson* was essentially erased from the books by the 1991 amendments to § 1981, this case must stand for the opposite conclusion now. The failure in that logic seems apparent to the court. The central issue still stands; does § 1981's protection of the original contract extend the termination of the contractual benefits? That was the question before *Patterson*, and it is the question after *Patterson*.

Bolton further argues that dismissing her claim would make § 1981 inconsistent with Title VII, as well as other employment discrimination statutes. However, there are vast differences in the history, and language of Title VII and § 1981. Whereas Title VII is focused on the employer/employee relationship, § 1981 is focused exclusively on the rights surrounding contractual obligations.

Bolton brings this court's attention to a Supreme Court case

---

that kind of right.

which recognizes a cause of action under Title VII in a similar circumstance to this case. *See Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). In that case, the Supreme Court held that a "former employee" could qualify as a "employee" for purposes of Title VII. This cause of action also exists under other employment discrimination statutes, such as the ADA. *See Johnson v. K Mart*, 273 F.3d 1035 (11th Cir. 2001). The legal analysis used in Title VII cases also carries over to many other discrimination statues, including § 1981. In *Robinson*, the Supreme Court relied, to some extent, on the fact that Title VII provides the remedy of reinstatement, which obviously presumes that the employee is no longer employed there, and must be put back in her job. *Robinson*, 519 U.S. at 342. Reinstatement is also available as a remedy under § 1981.[2] Because of these similarities, Bolton argues this court should transpose all of the Title VII case law onto § 1981. This court is not prepared to go so far.

The similarities between the statutes are worth noting, but they are different statutes, written at different times, with different scopes of protection and intent. Bolton is wrong to characterize these differences in the statutes as "inconsistencies." Title VII protects people from discrimination in

---

[2]Clearly, reinstatement is an available remedy to plaintiffs whose contract is wrongfully terminated. The discriminatory acts, in that case, would, presumably, take place while the contract was still enforceable. The reinstatement remedy does not somehow broaden the coverage of § 1981 to events that happened after the contract was terminated. Given this, the reinstatement remedy is completely consistent with this court's reading of § 1981.

employment because of their religion. Could a plaintiff walk into this court and argue that § 1981 also protects those rights because it is included in the protections of Title VII? Of course not, because it is well-settled that § 1981 covers only racial discrimination. This is a *difference* between the statutes, not an "inconsistency." So while Bolton may be right to argue that the difference in rejecting this theory because the contractual relationship is in the past is essentially the same as the losing argument made in *Robinson* that "employee" did not mean "former employee," that does not make the legal distinctions unimportant in the case at bar. In this case, the contract is a critical focus of the scope of the statute. The making, modification, enforcement and termination of contracts are all explicitly covered. A person who made a contract is not protected from discrimination by the other party to the contract in perpetuity. While this distinction might be formalistic, it is one that is supported by plain language and history of the statute. This case is a good reminder that while they are often interchangeable, Title VII and § 1981 are distinct statutes that merely tread on much of the same ground. Thus, the appeal to analogous bodies of law is not particularly helpful in this case.

The third prong of Bolton's argument that the original contract supports her retaliation claim is that her contract with Durable included the implied benefit of a reference to a

prospective employer. Section 1981(b) defines the term the "make and enforce contracts" of subsection "(a)" includes "the enjoyment of all benefits, privileges, terms and conditions" of an employment contract. Bolton's argument here is these privileges do not end when the contract terminates. *Cf. Windsor v. Bethesda General Hospital*, 523 F.2d 891 (8th Cir. 1975). In *Windsor*, the plaintiff had a valid claim where the defendant had plaintiff disqualified from unemployment benefits based on alleged discriminatory intent. Unemployment benefits are a statutorily granted privilege resulting from a previous employment contract[3]. Any right to such a benefit attaches with the contract and flows from it. Here, there is no right to a reference flowing from a contract. Employers are free to refuse to give references, because there is no contractual obligation to do so (like there would be to compensate the employee), and no statutory right attaching along with the contract (as with unemployment benefits). Bolton's argument would have every employer obligated to give references to future employers. That is simply not a benefit or privilege of an "at will" employment contract like this one. Therefore, having been satisfied on all these fronts, it seems clear that the § 1981 retaliation claim here cannot be based on the original contract between Bolton and Durable.

The much stronger ground for Bolton's retaliation claim is

---

[3]Obviously, state statutes differ on this point.

Durable's discriminatory interference with Bolton's attempt to make new employment contracts with prospective employers. Essentially, it is possible for Bolton to state a claim for discriminatory interference with his ability to form a new contract with a subsequent employer. Section 1981 itself protects the right of all persons with the jurisdiction of the United States to "make and enforce contracts." 42 U.S.C. § 1981(a)[4]. In addition, the rights drawn out in § 1981(a) are protected from "impairment by nongovernmental discrimination," as well out right denial by the statute. 42 U.S.C. § 1981(c).

There is no Eleventh Circuit law on this precise issue, but it seems to this court that such a claim that impairment of the right to make contracts with a prospective employer is congnizable. Other circuits have recognized, even in the era of *Patterson*, that a claim for discriminatory interference with the making of a contract with a third party is covered by § 1981. *See,e.g., Daniels v. Local Pipefitters Ass'n Local Union No. 597*, 945 F.2d 906, 913-916 (7th Cir. 1991).[5] The Seventh Circuit, in *Daniels*, found a cause of

---

[4] Just to maintain clarity, this court is citing to subsections (a),(b), and (c) of § 1981, and not to the distinct 42 U.S.C. § 1981a.

[5] *Daniels* was decided in the wake of *Patterson*, and takes that case into account in its reasoning. However, as has been noted by at least one other court, that this case was decided during the day of *Patterson* only shows that it would definitely be good law in light of the amendments to § 1981. *Morrison v. American Board of Psychiatry and Neurology, Inc.*, 908 F.Supp. 582, 589 (N.D. Ill. 1996)(arguing that "the very fact that *Daniels* came out the way it did despite the limitations then imposed by *Patterson* adds weight to" the argument that there is a cause of action for discriminatory interference in the making of prospective contracts with a third party). The cause of action for retaliatory/discriminatory interference in the making of a contract

action for impeding the right to contract as against a union hiring hall which discriminatorily denied a referral service which was the "primary mechanism" for obtaining jobs with employers in the area. *Id.* In that case the court held:

> The referral system erected substantial barriers to plaintiff's ability to enter into contract's with employers. This kind of race-based impediment to contract formation constitutes exactly the sort of racially discriminatory interference with the right to contract that remains actionable under § 1981.

*Id.* at 914. *See also Morrison v. American Board of Psychiatry & Neurology, Inc.*, 908 F.Supp. 582, 589 (N.D. Ill. 1996)(applying the cause of action to the discriminatory denial of Board certification which plaintiff alleged hurt her chances of receiving employment as a psychiatrist). While these cases are different from the present case because they represent true "third parties" who are intermediaries[6], or facilitators of action, a general rule seems easy to extrapolate. Section 1981 allows an action against substantial race-based impediments, or barriers, to contract formation set up by third parties.

---

existed even in the time period where *Patterson* said that no post-formation protections existed.

[6]There may a another relevant distinction between *Daniels* and *Morrison*, on the one hand, and this case on the other. In those cases, the defendant affirmatively took on the responsibility of being an intermediary or facilitator. In the case of an employee reference, no such affirmative responsibility has been taken on. However, this distinction is not squarely presented in this case because Bolton alleges that defendants affirmatively took it upon themselves to give a false, negative reference to a former employer. In another circumstance where an employer received a call from a prospective employer and gave a true, but negative reference when its normal policy is to give a neutral reference, this issue might be more squarely presented.


This court is convinced that the Seventh Circuit has it right. A broad cause of action can exist for a third party that creates a "substantial barrier" or "impediment" to the ability of a person to make contracts with future employers out of discriminatory motives. Further, if § 1981 is to have any teeth, retaliatory intent based upon the protections of the discrimination laws must have the same effect as discriminatory intent. Thus, insofar as an intermediary acts with a retaliatory intent based upon one seeking the protections of § 1981, his intent must be treated the same as if it is race-based discriminatory intent. This question cannot be answered differently just because the defendants were inspired with intent to retaliate against their former employer for reporting allegedly illegal employment actions rather than by general racially discriminatory intent. There may be a distinction between the motivations, but these factual averments not present it.

So the ultimate question is whether or not the actions of a former employer can rise to the level of a "substantial barrier" or "impediment" to the employees' attempts to form a new contract. At least one court has held that it can. *London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir. 1981).[7] The Ninth Circuit specifically

---

[7] Defendants note that the Ninth Circuit is the most overturned Circuit Court, and that this case is not binding precedent, anyway. These statements are both true, and are duly noted. This court, however, much like the Ninth Circuit, has little fear of "boldly going where no one has gone before." Because *London* was not overturned by the Supreme Court, and in light of the fact that there is no Eleventh Circuit law on point, defendants' argument seems rather inapposite. *London* is cited primarily for its persuasive logic on the question of the scope of § 1981's protection of the right to make

considered the issue of a negative reference in the context of the formation of a new contract, and said:

> By providing a an adverse employment reference with the intent to discriminate on racial grounds, a former employer actively interferes with a job applicant's right to enter into an employment contract, and may utilize the unwitting assistance of an otherwise innocent third party in its plan to discriminate. The giving of adverse references under such circumstances is contrary to the letter, and spirit of § 1981.

*Id.*

Bolton alleges that defendants with retaliatory intent gave out false and negative employment references. This court can only dismiss a complaint for failure to state a claim upon which relief can be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support in support of his claim which would entitle him to relief." *See, e.g.*, *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). In this case, taking Bolton's allegations as true, Bolton effectively states a claim upon which relief can be granted. When an actor uses whatever power it has, actively and affirmatively misleads possible contracting partners via false information for a discriminatory purpose, that conduct must be actionable under § 1981.[8] While there may be substantial factual

---

contracts.

[8] There is an additional question which is not presented by the briefs, or, in reality, even by this case. A past employer is generally called by a prospective employer and not the other way around. Is there some distinction between passively answering a question about a former employee or refusing to answer such a question, and actively seeking out to sabotage the former employee? In the present case this issue is not presented because regardless of any difference between active and passive retaliation, Bolton has alleged that the defendants affirmatively lied to prospective employers about her.

13

issues about the nature of damages, defenses, discriminatory motive, etc, the question here was whether this court could imagine a circumstance where the plaintiff would be entitled to relief. The facts may ultimately bear out that Bolton's complaint is not supported by evidence. In this posture, however, this court finds that a plaintiff who could prove that her former employer, with retaliatory intent, actively gave a negative, or false, reference to a prospective future employer would be entitled to relief under § 1981.

Therefore, defendants' motion to dismiss will be denied by separate order.

DONE this 17th day of December, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

This certainly would qualify as active retaliation, regardless of the fact that the prospective employer sought the defendants out. However, the question becomes much dicier where a defendant merely gives a neutral reference due to discrimination, when a positive or glowing reference would have been the normal procedure. Because this circumstance is different from Title VII, and perhaps even the standard § 1981 case, it seems unlikely this could be resolved merely by comparing a defendant's conduct when references were asked for by similarly situated employees. As previously noted, the former employer must rise to the level of being a "substantial barrier" or "impediment" to the plaintiff's ability to make contracts. A neutral reference, regardless of facts, almost certainly does not rise to that level. This court is not asked to decide this question today, but offers this aside merely for the sake of clarity.

15